IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>vs.<br><br>LUIS NOEL ARMENDARIZ<br><br>    Defendant. | **ORDER**<br><br>Case No. 2:06-CR-815<br>Judge Dee Benson |

Defendant Luis Armendariz moves the Court (again) to suppress evidence recovered upon the execution of a search warrant at his residence.  In his first motion to suppress, Mr. Armendariz argued that the warrant authorizing the search was not supported by probable cause.  The Court denied this motion from the Bench.[1]  Mr. Armendariz now turns his attention from the issuance of the warrant to its execution. Having reviewed the briefing and relevant law, the Court has determined that neither an evidentiary hearing nor oral argument is warranted and now (again) denies Mr. Armendariz's motion.

---

[1] Despite the Court's explicit prior rejection of the arguments in his first motion to suppress, counsel for Mr. Armendariz continues to argue his first motion in his second: "The [f]ederal agent provided the pretext for the search warrant by asserting the presumption that the Defendant was an illegal alien because of his possession of a Driver Privilege Card."  Reply Br. in Support of [Second] Motion to Suppress, Dkt. No. 24, at 2.  "In this case, the police officers did not have probable cause for the search warrant."  *Id*. at 5.  "Police officers hastily sought a search warrant instead of performing a legitimate investigation."  *Id*.  "In this case, the search warrant used by police officers was both substantively and procedurally defective."  *Id*. at 6. "Deterring police officers from obtaining hasty search warrants not supported by probable cause [and] which are facially invalid . . . is essential."  *Id*.  This technique might be more effective if repetition were all that was required to transform unpersuasive arguments into persuasive ones.

*I.*

On October 28, 2006, Officer Ryan Yardley and Sergeant Mike Clegg of the Heber City Police Department responded to a noise complaint at 1390 South Highway 40, #2 in Heber City. Arriving at the scene, the officers heard loud music coming from a trailer and called through the trailer's open door. Mr. Armendariz came to the door, left the trailer, and turned off the engine of a truck nearby. When Mr. Armendariz adjusted the seat in the truck, Officer Yardley saw the handgrip of a pistol "hanging out of a coat on the bench seat." Affidavit of Sgt. Mike Clegg ¶ 9. Mr. Armendariz informed the police that he had found the pistol at work and said he had another gun at home. Sergeant Clegg appears to have assumed—although his affidavit does not specify why—that Mr. Armendariz could not legally possess a firearm: "I asked Mr. Armendariz if he knew he wasn't supposed to have a firearm, and he indicated that he was aware of that." *Id*. Having admitted that he could not possess a firearm, Mr. Armendariz promptly informed the police that they could have the gun in the truck if they liked. Sergeant Clegg then asked Mr. Armendariz for identification, and Mr. Armendariz produced a Utah driver's license marked for driving privileges only. The officers took the gun with them and returned to the station.

Sergeant Clegg then contacted Agent Carlos Gamarra of the United States Bureau of Immigration and Customs Enforcement and asked him about the significance of a driver's license marked for driving privileges only. Agent Gamarra informed Sergeant Clegg that such a card "typically" indicates that the holder is not legally in the United States. *Id*. ¶ 16. Agent Gamarra checked, but could not find a green card number for Mr. Armendariz. Since Utah law criminalizes possession of a firearm by a person illegally in the United States, *see* Utah Code Ann. § 76-10-503, Sergeant Clegg swore out an affidavit and obtained a search warrant for Mr.

Armendariz's residence.  On the search warrant, below the magistrate's signature, there is a handwritten note:

> On Oct 29th at 0134 I talked to Judge McCotter
> Authorized night time service of this warrant.  MSC

Attachment 1, Response to [First] Motion to Suppress Evidence, Dkt. No. 13-2.  Officers executed the search warrant at 1:40 a.m. on 29 October and discovered a Beretta 9 mm pistol with two ammunition clips, a BB gun, a box of 9mm bullets, and a box of 22 caliber bullets.  Attachment 3, Response to [First] Motion to Suppress Evidence, Dkt. No. 13-2.

*II.*

Mr. Armendariz contends the nighttime search violated Utah law requiring daytime execution of search warrants absent a specific direction by the issuing magistrate based upon testimony showing there is reasonable cause to believe the evidence will be hidden or destroyed, or "for other good reason."  Utah Code Ann. § 77-23-205(1).  The search warrant also, in Mr. Armendariz's view, failed to conform with several of the requirements of the Utah Rules of Criminal Procedure.  *See* Utah R. Crim. P. 40(b), (d), (e).  If this were not enough, Mr. Armendariz also contends the search was unreasonable under the Fourth Amendment to the United States Constitution and violated Federal Rule of Criminal Procedure 41(e)(2)(B).

Mr. Armendariz is more insistent than coherent in urging the application of state law.  Beyond asserting, without any citation of authority, that "Federal and State law enforcement agents are bound by federal and state laws," and that "the restrictions in the state and federal law regarding search warrants serve a legitimate purpose," Mr. Armendariz offers no rationale for analyzing the search under state law.  Reply Br. [Second] Motion to Suppress Evidence, 3.  This is perhaps so because state law does not apply: "in federal prosecutions the test of reasonableness

in relation to the Fourth Amendment protected rights must be determined by Federal law even though the police actions are those of state police officers." *United States v. Le*, 173 F.3d 1258, 1264 (10th Cir. 1999) (quotation and citation omitted). The exclusionary rule in federal prosecutions is intended to deter violations of the federal constitution, not state law, so "[t]he fact that [an] arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended." *Id*. at 1265 (quotation and citation omitted).

While it is clear that federal law applies, it is less clear on these facts whether the search is subject to constitutional limits only, or whether the Federal Rules of Criminal Procedure are also applicable. Mr. Armendariz argues that the manner in which Sergeant Clegg documented the magistrate's approval of the nighttime execution of the warrant does not conform to the requirements of Federal Rule of Criminal Procedure 41, which provides that a warrant "must command the officer to . . . execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time." Fed. R. Crim. P. 41(e)(2)(B) (2003). On its face, the rule applies only to warrants secured by federal law enforcement officers. *See* Fed. R. Crim. P. 41(b) (setting out which officials may issue a warrant under the rule and stating that they may do so "[a]t the request of a federal law enforcement officer or an attorney for the government"); *see also United States v. Weiland*, 420 F.3d 1062, 1070 n.4 (9th Cir. 2005) (noting that only federal officials are permitted to seek warrants under Rule 41 and that when state officials seek and execute federal warrants "in their capacity as specially deputized federal law enforcement officers, they will be subject to the same Rule 41 and other standards as all other federal law enforcement officers").

The requirements of Rule 41 may apply to a search sought, granted, and conducted by state officials, however, if that search was nevertheless "federal in character":

> If a search is a state search, with minimal or no federal involvement, the warrant need only to conform to federal constitutional requirements . . . . However, on the other hand, even though the search is made pursuant to a state warrant, if the search is nonetheless federal in character, then the legality of the search would be conditioned upon a finding that the warrant satisfied federal constitutional requirements and certain provisions of Fed.R.Crim.P. 41 designed to protect the integrity of the federal courts or to govern the conduct of federal officers.

*United States v. Millar*, 543 F.2d 1280, 1283–84 (10th Cir. 1976) (quotations and citations omitted). Whether a search is federal or state in character depends on the level of participation of federal officers: "A search is 'federal in character' when federal officers are directly involved in carrying out the search itself and in taking immediate custody of the fruits of the search." *United States v. Bookout*, 810 F.2d 965, 967 (10th Cir. 1987).

The parties' accounts of the search here appear to conflict, although neither party unambiguously asserts that federal officers did or did not participate in the search. The government's version highlights the primacy of state officials in the search, but stops short of assuring the Court that only state officers participated:

> The search warrant was obtained by state officers from a state magistrate, and the search was executed by state officers conducting a state investigation. Although at the time of execution, Sgt. Clegg and Officer Ryan Yardley had consulted with a federal officer—Immigration and Customs Enforcement Agent Carlos Gamarra—into the Defendant's immigration status, and presumably knew they were investigating a possible federal crime, they were also continuing their investigation into the state criminal matter.

Opposition to [Second] Motion to Suppress, 3. Mr. Armendariz tells the story rather differently, but with no detail concerning the actual level of participation by federal officers in the execution of the warrant:

5

> Both state and federal actors participated in the execution of the search warrant in this case. Although the search warrant was issued by a state judge and executed by state police officers, a federal ICE agent participated extensively in the execution of the warrant beginning with the initial phone call by Officer Clegg. The Federal agent provided the pretext for the search warrant by asserting the presumption the Defendant was an illegal alien because of his possession of a Driver Privilege Card.

Reply Br. in Support of [Second] Motion to Suppress, 2.

To the extent that Mr. Armendariz alleges only that a federal officer provided the information that formed the basis of the probable cause determination, he has not shown the search to have been federal in character. *See Bookout*, 810 F.2d at 968 (search state in character when executed by state officers where warrant based on information conveyed by federal officer). If, on the other hand, Mr. Armendariz contends that federal officers took part in the execution of the warrant, the question is a closer one. While the parties' conflicting accounts of the search do not permit a conclusion regarding the participation of federal officers in the execution of the search, there is no need to take evidence on the matter because, even if the Court were to assume, arguendo, that the search was federal in character, there has been no violation of the requirement in Rule 41 that nighttime searches be supported by good cause and expressly authorized by the issuing magistrate.

Mr. Armendariz appears to believe that a nighttime search is such a severe intrusion on the privacy interests of the occupant of a home that a nighttime search is "unreasonable [when] there [are] no exigent circumstances to justify the execution of a nighttime search warrant." Reply Br. in Support of [Second] Motion to Suppress, 4. But this belief is supported by neither

the language of the rule nor by the case law interpreting it:[2]

> While it is not controlling here, Rule 41, F.R.Crim.P. is a useful guide because it implements the essentials of the Fourth Amendment. Rule 41(c) requires that the warrant be served "in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime." Thus beyond the probable cause needed for every warrant, Rule 41(c) only requires that there be cause for carrying on the unusual nighttime search and that the issuing authority be convinced that it is reasonable under the circumstances. The reasonableness of an asserted justification may, in certain cases, be difficult to determine. Resolution of marginal cases, however, is largely determined by the preference to be accorded to warrants.

*United States v. Gibbons*, 607 F.2d 1320, 1326–27 (10th Cir. 1979) (quotations and citations omitted). Rule 41, in its current form, requires only "good cause" for a nighttime search to be appropriately authorized, not exigent circumstances. And *Gibbons* asks only that the good cause offered be sufficient to convince the magistrate that a nighttime search is reasonable.

There was sufficient evidence before the magistrate in this case to make authorization of a nighttime search reasonable. Mr. Armendariz told the officers who responded to the noise complaint that he had a gun in addition to the one they confiscated. During that encounter, officers inquired into his immigration status and asked him if "he knew he wasn't supposed to have a firearm." And Mr. Armendariz agreed that he ought not have a gun. Under these circumstances, there was good reason for officers to think Mr. Armendariz might move the gun in order to forestall future police investigation. In *United States v. Morehead*, 959 F.2d 1489, 1497 (10th Cir. 1992), the nighttime search of a residential trailer was found to satisfy the

---

[2] Although the structure of the rule was significantly altered by amendments effective December 1, 2002, the alterations were intended to make the rule "more easily understood," and were intended to be "stylistic," rather than substantive. Fed. R. Crim. P. 41, Advisory Committee Notes (2002 Amendment). Cases interpreting the earlier version of the rule thus remain instructive.

constitutional requirement of reasonableness because the evidence described in the search warrant (marijuana plants) "could have readily been moved or destroyed, and [neither suspect was] in custody at the time."  *See also United States v. Tucker*, 313 F.3d 1259, 1265–66 (10th Cir. 2002) ("It has been held that the danger of destruction or removal of the evidence is sufficient reason for nighttime execution of a search warrant, in part because such circumstances could even constitute exigent circumstances for a search without a warrant. . . .We agree . . . that a substantial risk of destruction of the evidence would justify execution of a search warrant at night.").  Like the marijuana plants in *Morehead*, the gun and ammunition at issue here could easily have been moved by a suspect who was not in custody.  Moreover, Mr. Armendariz knew that he was under investigation and that police knew he had another gun in his residence.  Time was of the essence, and waiting until morning could have permitted Mr. Armindarez to move the gun with impunity; a nighttime search was reasonable under these circumstances.[3]

The nighttime execution of a search could meet the Fourth Amendment and Rule 41 requirement of reasonableness but still fall afoul of the Rule's procedural requirement that nighttime execution of a warrant be expressly authorized.  Mr. Armendariz confines his

---

[3]*Morehead* addresses reasonableness in terms of the Fourth Amendment rather than Rule 41.  But Rule 41(e)(2)(B) appears to codify the Fourth Amendment requirement of reasonableness as it relates to nighttime searches; it does not appear to add a new and more stringent standard.  Indeed, the Tenth Circuit Court of Appeals has used the nighttime search provisions of Rule 41 as a guide to the requirements of the Fourth Amendment:  "While it is not controlling here, Rule 41, F.R.Crim.P. is a useful guide because it implements the essentials of the Fourth Amendment."  *United States v. Gibbons*, 607 F.2d 1320, 1326 (10th Cir. 1979) (quoting *Jones v. United States*, 357 U.S. 493, 498 (1958) (observing that a (prior) version of Rule 41 "implements the Fourth Amendment by requiring that an impartial magistrate determine from an affidavit showing probable cause whether information possessed by law-enforcement officers justifies the issuance of a search warrant").

procedural arguments to the Utah Rules of Criminal Procedure, but he would presumably also object that Rule 41 requires that the magistrate "expressly authorize" a nighttime search. The express authorization of the nighttime search in this case is recorded in what is apparently Sergeant Clegg's hand-written notation:

> On Oct 29th at 0134 I talked to Judge McCotter
> Authorized night time service of this warrant. MSC

Attachment 1, Response to [First] Motion to Suppress Evidence, Dkt. No. 13-2. The magistrate appears to have expressly authorized nighttime execution in a conversation with Sergeant Clegg, who then memorialized the authorization on the search warrant. Mr. Armendariz has cited no legal authority requiring that express authorization be documented in a particular manner in order to satisfy the requirements of Rule 41, and absent such a requirement, the Court would be reluctant to mandate a form of authorization not explicit in the Rule.

Moreover, even if the requirement of express authorization were not satisfied by the hand-written note, Mr. Armendariz must still show that this violation requires exclusion of the evidence. A merely technical violation of Rule 41 does not mandate exclusion of evidence obtained pursuant to the defective warrant:

> Unless there is a clear constitutional violation,[4] non-compliance with Rule 41

---

[4] Mr. Armendariz would no doubt argue that the nighttime execution of the search was a clear constitutional violation, but the Court's prior determination that nighttime execution was reasonable both for purposes of the Fourth Amendment and Rule 41 disposes of that argument. Moreover, even if the search had violated the reasonableness requirement of the Fourth Amendment, it would be saved by the *Leon* good-faith exception. *See United States v. Leon*, 468 U.S. 897 (1984); *see also United States v. Nielson*, 415 F.3d 1195, 1202–3 (10th Cir. 2005) (applying the *Leon* good faith exception to the no-knock execution of a warrant). Even Mr. Armendariz makes very little effort to argue that *Leon* does not apply, merely reasserting his belief that the search warrant was not supported by probable cause. Since the Court's ruling on Mr. Armendariz's first motion to suppress explicitly rejected this argument, it does not advance

requires suppression of evidence only where (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the rule.

*United States v. Rome*, 809 F.2d 665, 669 (10th Cir. 1987) (quoting *United States v. Stefanson*, 648 F.2d 1231, 1235 (9th Cir. 1980)).  Mr. Armendariz has shown neither that he was prejudiced in the relevant sense nor that Sergeant Clegg's hand-written notation was made in deliberate defiance or disregard of Rule 41.  Indeed, it is most unlikely that Mr. Armendariz could make either showing.  Given that the affidavit contained information sufficient to make a nighttime search reasonable, the search would still have occurred—and occurred at night—had compliance with the rule been perfect.  Rather than evidencing deliberate disregard of the rule, Sergeant Clegg's hand-written notation appears to have been made in an effort to comply with its terms.  Mr. Armendariz has not alleged that Sergeant Clegg's note is a fabrication, that he did not obtain authorization for nighttime execution from the magistrate, and absent such an allegation, it is difficult to imagine how the record could support a finding of deliberate disregard of the rule.  The Tenth Circuit Court of Appeals has rejected "a hypertechnical approach to search warrants," declining to exclude evidence obtained under a warrant where violations of Rule 41 were deemed harmless.  *Rome*, 809 F.2d at 670.  Rule 41 has not been violated on the facts of this case, but even if it had been, that violation would be harmless and unintentional.

      Finally, even if a violation of the Fourth Amendment occurred as contended by Defendant on the facts presented here, suppression would not be an appropriate remedy.  In *Hudson v. Michigan*, 126 S. Ct. 2159 (2006), the United States Supreme Court declined to require

---

his cause here.

suppression of evidence obtained from a search that violated the requirement that police knock and announce their intention to execute a search warrant before entering to do so.  *See also United States v. Colonna*, 360 F.3d 1169, 1175–76 (10th Cir. 2004) ("Similar considerations justify the nighttime execution of a search warrant" and the no-knock execution of a search warrant).  The interests protected by the general rule in favor of daytime searches, like the interests protected by the knock and announce rule at issue in *Hudson*, "have nothing to do with the seizure of evidence, [and] the exclusionary rule is inapplicable." *Hudson*, 126 S. Ct. at 2165.  In other words, the general requirement that search warrants be executed in the daytime hours is unrelated to the ability of the police to search for the evidence specified in the search warrant, and exclusion of evidence is not necessarily an appropriate remedy when it is only the manner of the search, and not the fact of the search, that violated some aspect of a defendant's Fourth Amendment rights.

*III.*

There has been no violation of Mr. Armendariz's rights under federal law, and no prejudice to him even if there had been.  Moreover, suppression would be an inappropriate remedy even if there had been a violation of the Fourth Amendment or Rule 41.  Mr. Armendariz's motion to suppress the evidence obtained in the search of the trailer is, accordingly, denied.

It is so ordered.

Dated this 25th day of May, 2007.

_____
Dee Benson
United States District Judge